UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ALLEN CHRISTOPHER BROWN, | ) No. CV 16-04379-AS |
| Plaintiff, | ) **MEMORANDUM OPINION** |
| v. | ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**PROCEEDINGS**

On June 17, 2016, Plaintiff Allen Christopher Brown ("Plaintiff") filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability and Disability Insurance Benefits ("DIB"). (Docket Entry No 1). On November 16, 2016, Defendant filed an Answer to the Complaint and the Certified Administrative Record ("AR"). (Docket Entry Nos. 17-

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

1

18). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 13, 14). The parties filed a Joint Stipulation ("Joint Stip.") on February 21, 2017, setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 19).

**SUMMARY OF ADMINISTRATIVE DECISION**

On January 2, 2013, Plaintiff, formerly employed as a data entry clerk, phlebotomist, quality control technician, lab technician, blending tank tender, equipment cleaner and soil tester, (see AR 62-63), filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on September 25, 2012. (AR 145). On July 10, 2014, the Administrative Law Judge ("ALJ"), Elizabeth R. Lishner, examined the record and heard testimony from Plaintiff, who was represented by counsel, and vocational expert ("VE"), Ronald Hatakeyama. (AR 29-69). On September 12, 2014, the ALJ denied Plaintiff benefits in a written decision. (AR 9-18).

The ALJ applied the five-step process in evaluating Plaintiff's case. (AR 11-18). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of September 25, 2012. (AR 11). At step two, the ALJ found that Plaintiff had the severe impairments of depression and inguinal hernia. (AR 11). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 11).

Before proceeding to step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. 404.1567(b), including lifting up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking up to 6 hours in an 8-hour workday; sitting up to 6 hours in an 8 hour workday; limited to occasional complex work; and no fast-paced production work. (AR 13).

In making this finding, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were less than fully credible. (AR 15). The ALJ noted that although Plaintiff asserted he could lift no more than 5 pounds, had difficulty concentrating and poor mental aptitude, his assertions were not supported by the objective medical record. (AR 15). Medical records indicated he had good mental status examinations and rarely complained of physical pain after his hernia surgery. (Id.) In addition, Plaintiff testified that his pain decreased and mental condition improved after the hernia surgery he had undergone six months ago, he did not regularly see his doctor for any pain, and that he completed normal daily activities, such as cooking, attending group meetings, walking, and going to the library. (Id.). Moreover, while Plaintiff testified that he felt side effects from his medication, the record repeatedly mentioned that there were no side effects. (Id.).

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

3

In determining the Plaintiff's RFC, the ALJ gave more weight to the report prepared by F.L. Williams, M.D., a State agency physician, than to the opinion of Mark Geisbrecht, M.D., Plaintiff's treating psychiatrist. (AR 16).

In a Disability Determination Explanation dated July 8, 2013, Dr. Williams found Plaintiff was not significantly limited in his ability to understand and carry out very short and simple instructions, perform activities within a schedule, sustain an ordinary routine without supervision, work in coordination with, or in proximity to, others without being distracted by them, make simple work-related decisions, and complete a normal workday without interruptions from psychologically based symptoms; moderately limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods; and markedly limited in the ability to understand and remember detailed instructions. (AR 77). Dr. Williams ultimately found that Plaintiff's limitations were not severe enough to keep him from working. (AR 80).

The ALJ gave little weight to Dr. Williams' opinion that Plaintiff could understand and perform simple instructions, finding that Plaintiff's testimony and medical records showed that he was capable of performing more than simple, repetitive tasks. (AR 16). The ALJ found that Plaintiff had mild restrictions in activities of daily living because he was able to take care of himself, attend group meetings, go on walks and visit the library. (AR 12). The ALJ found that Plaintiff has mild difficulties in social functioning

because, although he asserted that he has difficulty tolerating others in his disability application, he testified that he has some friends. (AR 12). The ALJ found that, in regard to concentration, persistence and pace, Plaintiff has moderate difficulties. (AR 12). Plaintiff testified his main problem was concentration, but his medical records described good mental status examinations. (AR 12). The ALJ found only one instance of Plaintiff struggling to stay concentrated and on task. (See AR 377). The ALJ did not find any episode of decompensation for an extended period of time. (AR 12). The ALJ found no evidence that Plaintiff's depression could result in any decompensation because he had been able to function outside a highly supportive environment. (AR 12).

In a Residual Functional Questionnaire, dated December 10, 2013, Plaintiff's treating physician, Dr. Geisbrecht opined that Plaintiff could sit for 3 hours in an 8-hour workday and stand/walk for 2 hours in an 8-hour workday; occasionally lift less than 10 pounds; engage in grasping, fine manipulation and reaching for 50 percent of the workday; and miss work three or more times per month. (AR 454-55). Dr. Geisbrecht reported Plaintiff experienced drowsiness, pain, blurred vision and headaches as side effects of his medication. (AR 454).

The ALJ rejected the opinion of, Dr. Geisbrecht because it was inconsistent with his own treatment notes and not supported by Plaintiff's medical records. (AR 16). For example, the ALJ noted that Dr. Geisbrecht mentioned side effects on the Residual Functional Questionnaire but did not note any side effects in his

5

examination notes. (AR 16). The ALJ noted that Plaintiff's "medical status examinations were good, with normal speech and eye contact, affect congruent with mood, linear thought process, and no thought content disturbances." (AR 14). The ALJ highlighted that during one exam "his insight was adequate and his judgment intact" and he had good grooming, stable gait, with an organized and linear thought process. (AR 14). In early 2014, Plaintiff stated that his depression "seemed like it [was] easing." (AR 14).

At step four, the ALJ determined that Plaintiff was not able to perform his past relevant work. (AR 16). At step five, the ALJ found Plaintiff was able to perform jobs consistent with his age, education and medical limitations existing in significant numbers in the national economy. (AR 17). The ALJ adopted VE testimony that Plaintiff could perform the jobs of office helper (DOT 239.567-010), mail clerk (DOT 209.687-026) and cleaner housekeeper (DOT 323.687-014). (AR 17). The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). (AR 17). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to benefits. (AR 18).

On October 8, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision. The Appeals Council denied Plaintiff's request on September 10, 2016. (AR 5). The ALJ's decision then became the final decision of the Commissioner,

allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTION**

Plaintiff asserts that the ALJ improperly rejected the opinion of treating physician, Dr. Geisbrecht, in favor of the opinion of non-examining medical expert, Dr. Williams. (See Joint Stip. at 4-10).

# DISCUSSION

After reviewing the record, the Court finds that the ALJ gave specific and legitimate reasons to reject the opinion of Dr. Geisbrecht, Plaintiff's treating physician. As Defendant points out, the ALJ also rejected the opinion of Dr. Williams, a State agency physician. The Court therefore AFFIRMS the ALJ's decision.

## A. The ALJ Gave Specific and Legitimate Reasons to Reject The Opinion Of Treating Physician, Dr. Geisbrecht

Plaintiff contends that the ALJ did not provide sufficiently specific and legitimate reasons to reject the opinion of Dr. Geisbrecht in favor of the opinion of Dr. Williams for the following reasons: (1) Dr. Geisbrecht's notes were not prepared in anticipation of litigation, they were prepared in the context of treatment and thus did not include a description of Plaintiff's side effects; (2) while the record contains evidence of improvement during the course of treatment, Plaintiff continued to present with symptoms of depression, including constricted affect, dysphoric speech and depressed mood; (3) the ALJ, in rejecting both Dr. Geisbrecht and Dr. Wiliams' opinions for being inconsistent with the record as a whole, interpreted the medical evidence on her own as if she was the medical expert; and (4) the ALJ erred in dividing Dr. Giesbrecht's opinion into mental and physical categories but only offered reasons to discount his assigned physical limitations. (See Joint Stip. at 8-10).

Defendant asserts that the ALJ properly rejected Dr. Geisbrecht's opinion for the following reasons: (1) his opinion was "inconsistent with his own treatment notes and not supported by the [Plaintiff's] medical records," (Joint Stip. at 12); (2) while the ALJ gave more weight to the opinion of Dr. Williams, the ALJ properly adopted neither Dr. Geisbrecht's or Dr. Williams' opinion because both opinions conflicted with other evidence in the record, (Joint Stip. at 10), and (3) little weight was given to Dr. Williams because the medical records and Plaintiff's testimony revealed that Plaintiff "is capable of more than simple repetitive tasks." (AR 16).

Social Security regulations require the Agency to "evaluate every medical opinion we receive," giving more weight to evidence from a claimant's treating physician. 20 C.F.R. § 404.1527(c). If the treating or examining physician's opinions are not contradicted, they can only be rejected with clear and convincing reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating or examining physician's opinion is contradicted by another doctor, the "[Commissioner] must determine credibility and resolve the conflict." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 692 (9th Cir. 2009) (quoting <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956–57 (9th Cir. 2002). "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." <u>Lester</u>, 81 F.3d at 831, (<u>as amended</u>) (Apr. 9, 1996)

(quoting Roberts v. Shalala, 66 F.3d at 179, 184 (9th Cir. 1995)). While the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies rejecting the opinion of a treating physician, Lester, 81 F.3d at 831, it may serve as substantial evidence when the opinion is consistent with "independent clinical findings or other evidence in the record." Thomas, 278 F.3d 947 at 957. An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof and making findings." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citations omitted). Dr. Williams' opinion contradicted the opinion of Dr. Geisbrecht. Accordingly, the ALJ was required to provide specific and legitimate reasons to reject Dr. Geisbrecht's opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014).

As set forth below, the ALJ's findings that Dr. Geisbrecht's opinion was inconsistent with his own treatment notes, not supported by the medical record as a whole and contradicted by Plaintiff's own testimony constituted specific and legitimate reasons for rejecting the opinion.

The ALJ properly found that Dr. Geisbrecht's opinion was contradicted by his own treatment notes. (AR 16). Multiple previous examinations and progress notes from Dr. Geisbrecht's clinic indicated that the Plaintiff routinely wore clean and appropriate clothing, was well-groomed, made no unusual movements or behaviors, smiled and actively participated in treatments. (See AR

384, 387-96, 412, 429). Such normal behavior contradicts Dr. Geisbrecht's opinion that Plaintiff was severely limited in terms of concentration, understanding, social interaction and adaptation, and was a specific and legitimate reason to reject Dr. Geisbrecht's opinion. (See AR 458-59). See <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (upholding ALJ's rejection of treating physician's opinion because his own clinical notes contradicted his own opinion); <u>Noe v. Apfel</u>, 6 Fed.Appx. 587, 588 (9th Cir. 2001) (ALJ's examples of treating physician's notes contradicting her ultimate conclusion was a specific and legitimate reason to reject the opinion).

Plaintiff asserts that the objective medical record supports Dr. Geisbrecht's opinion because clinical findings showed that Plaintiff suffers from major depression. (Joint Stip. at 5). However, the record as a whole, including Dr. Geisbrecht's own notes, illustrate only recurring symptoms of moderate depression and sadness with minimal to no mention of any extreme limitations or obstacles. During a September 25, 2012 examination Plaintiff was appropriately dressed, well-groomed, appearing depressed but presenting a clear thought process and no indication of side effects was listed by the treating physician. (AR 409). At a January 28, 2013, follow-up appointment, Plaintiff appeared well-groomed, exhibited improved eye contact, a "little brighter" affect and linear thought process. (AR 301). During a February 22, 2013 examination, Plaintiff was alert and oriented and stated that his overall depression had decreased since he began treatment. (AR

11

395). During an April 3, 2013, meeting Plaintiff actively participated and meaningfully contributed to group treatment, was alert and oriented, well-groomed, exhibited normal speech, normal eye contact and described his mood as happy and as an "8 out of 10." (AR 393). These notes directly contradicted Dr. Giesbrecht's assertion that Plaintiff has extreme limitations in the ability to adhere to basic standards of cleanliness, get along with others without exhibiting behavioral extremes and that Plaintiff was prone to "added anger, irritability and . . . [could] become easily frustrated and withdrawn from others." (AR 458). See Connett v. Barnhart, 340 F.3d 871, 874-75 (9th Cir. 2003) (ALJ set forth specific, legitimate reasons for rejecting treating physician's opinion because it was "not supported . . . by his own notes. His own conclusions also had multiple inconsistencies with all other evaluations."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (upholding ALJ's rejection of treating physician's opinion because it was "unsupported by rationale or treatment notes, and offered no medical findings to support the existence of [Plaintiff's] alleged conditions"); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (upholding ALJ's rejection of treating physician's opinion because the level of impairment indicated by the treating physician was "unreasonable given the description of [Plaintiff's] symptoms in [the treating physician's reports] and other evidence in the record").

Additionally, during a May of 2013 appointment, Plaintiff continuously described his mood as either an 8 or 9 out of 10 by the

end of each examination and continued to actively participate in his treatments. (See AR 324-26). During a January 10, 2014, examination, Plaintiff was dressed appropriately, well-groomed, smiling, friendly, had an organized thought process, was without evidence of psychotic behavior or mania and described his mood as "depressed but easing." (AR 429). These notes were inconsistent with Dr. Geisbrecht's contention that Plaintiff may not want to get out of bed, care for his basic needs or interact appropriately with others in a social setting. (AR 459).

The ALJ properly discounted Dr. Geisbrecht's opinion because it was unsupported by the medical record as a whole. The side effects that Dr. Geisbrecht listed in the Residual Functional Questionnaire, such as drowsiness, pain, blurred vision and headaches, were not mentioned in any treatment or progress notes. In addition, Dr. Geisbrecht's opinion that Plaintiff had extreme to marked mental limitations, including the ability to maintain attention and concentration, maintain appropriate behavior, adhere to basic standards of neatness and cleanliness, and work in coordination with or in proximity to others without being distracted by them, were not mentioned during any treatment examination notes by Dr. Geisbrecht or his staff. (AR 459-49). Other medical records did not indicate any mental limitations, physical limitations or pain, except prior to Plaintiff's hernia surgery. (See AR 353). Plaintiff testified that the pain in his hernia and his mental problems had decreased since his hernia surgery. (AR 59-60). See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (upholding ALJ's rejection of

treating physician's opinion because they "were not supported by any findings made my any doctor, including [the treating physician]"); Allison v. Astrue, 425 Fed.Appx. 636, 639 (9th Cir. 2011) (upholding ALJ's rejection of treating physician's opinion after finding that the treating physician "presented no support for his opinion"); Stout v. Comm'r of Soc. Sec. Admin., 191 Fed.Appx. 554, 555 (9th Cir. 2006) (upholding ALJ's decision to reject treating mental healthcare provider because the provider's opinion was devoid of any clinical findings or rationale to support his conclusion).

The ALJ's finding that Plaintiff's own testimony contradicted Dr. Geisbrecht's opinion was also a specific and legitimate reason to reject Dr. Geisbrecht's opinion. During the hearing, Plaintiff testified that he had "good days and bad days" but "basically [had] improved;" could fix meals for himself; takes care of his personal hygiene and dressing; partake in daily activities, such as group meetings; takes the bus; liked to "stay busy;" and attends PTSD, stress and mental health meetings approximately once or twice a week. (AR 53-56). Plaintiff also testified that, although he did not believe he could handle a full-time job, he could possibly work part-time. (AR 61). Plaintiff also expressed that some days he would get paranoid and not feel safe leaving the house, but he did go on walks, go to the store and go to the library. (AR 55). The ALJ properly found that Plaintiff's testimony did not support his allegations of such extreme and limited mental and physical capabilities. Albeit somewhat limited, Plaintiff was clearly able to care for himself and partake in daily life to a degree that would

be incredibly difficult if his limitations were as severe as he alleged. See Magallanes v. Bowen, 881 F.2d 747, 751-52 (9th Cir. 1989) (upholding ALJ's rejection of treating physician's opinion that contradicted the claimant's own testimony); Myers v. Barnhart, 2006 WL 1663848, at *6 (C.D. Cal. 2006) ("[A] treating physician's assessment of a claimant's restrictions may be rejected to the extent it 'appear[s] to be inconsistent with the level of activity' the claimant maintains, or contradicts Plaintiff's testimony.").

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 19, 2017

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE